IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

Joan Bruno               :

    Plaintiff        :

v.                       : Case No. 3:14-CV-2140

Nationwide Mutual Fire   :
Insurance Company
                         : (Judge Richard P. Conaboy)
    Defendant.

---

**Memorandum**

We consider here Defendant Nationwide Mutual Fire Insurance Company's Motion for Summary Judgement (Doc. 12). The motion has been fully briefed (Doc. 14, 17, and 19) by the parties and is now ripe for disposition. For the reasons that follow, Defendant's motion will be granted.

**I.   Factual Background.** [1]

This case arises from a fire that occurred on January 9, 2013. The fire caused extensive damage to a six-unit rental property owned by Plaintiff Joan Bruno and her husband in Bushkill, Lehman Township, Pennsylvania. (Doc. 12, ¶ 1; Doc. 15, ¶ 1). On the day the fire occurred, Plaintiff notified Defendant of the fire and of her claims under her insurance contract with Nationwide, more specifically, Nationwide Policy No. 5837DP848634(hereinafter the

---

[1] Items presented as facts are derived from Plaintiff's Complaint (Doc. 1-2), Defendant's Answer (Doc. 11), Defendant's Motion for Summary Judgment (Doc. 12), and Plaintiff's Answer to Defendant's Motion for Summary Judgment (Doc. 15).

1

"Policy"). (Doc. 1-2, ¶ 5; Doc. 11, ¶ 5; Doc. 12, ¶ 4; Doc. 15, ¶ 4). Nationwide has made payments under the Policy totaling $311,947.60 (Doc. 12, ¶ 5; Doc. 15, ¶ 5). Plaintiff has been fully paid for all of the actual fire damage to the structure in the amount of $192,494.73. (Doc. 12, ¶ 6; Doc. 15, ¶ 6).[2] Plaintiff has also been paid the full amount of contents coverage ($15,000.00) available under the Policy, the value of 12.5 months lost rent ($71,630.00), and increased costs of compliance ($29,060.17) with laws and ordinances regulating re-construction of the rooming house. (Doc. 12, ¶ 7; Doc. 15, ¶ 7).

Despite acknowledging receipt of the aforementioned payments from Nationwide, Plaintiff claims lost rent above and beyond what Nationwide has paid and the "total loss" of value for the subject property and an adjacent complex of rental properties caused by problems with the land on which the rental property sits and its outdated sewage system. (Doc. 12, ¶ 9; Doc. 15, ¶ 9).

With respect to the Policy's coverage for lost rent, the Policy states: "Payment will be for the shortest time required to repair or replace that part of the Described Location rented or held for rental." (Doc. 12, ¶ 10; Doc. 15, ¶ 10). While Plaintiff admits that Nationwide paid the full value of her lost rent for 12.5 months and acknowledges that she has halted repair efforts due

---

[2] While Plaintiff admits that "the fire damage estimate was accurate if the structure could be repaired", she contends that the estimate is "inaccurate since the structure is a total loss." (Doc. 15, ¶ 6). Plaintiff's reasoning for making this distinction will be discussed below.

to a lack of a municipal permit to install a new sewage disposal system, she contends that she is entitled to additional lost rent since she has terminated her efforts due to her perception that the permitting process will be lengthy and costly. (Doc. 15, ¶¶ 12-15).

In addition to the amounts already received from Nationwide to reconstruct the rooming house, Plaintiff also seeks an additional payment for the loss of value of the rooming house because the permitting process for construction of a new septic system is too onerous or expensive and because problems with the land itself have prevented the installation of a new septic system. (Doc. 12, ¶¶ 16-17; Doc. 15, ¶¶ 16-17). Discovery conducted by the parties disclosed, inter alia, that: (1) the septic system at the subject property was last permitted and installed in 1977; (2) plaintiff and her husband bought the subject property in the 1990's; (3) the municipality (Lehman Township) began investigating possible sewage violations at the property in 2002; (4) plaintiff hired an engineering firm in 2002 to evaluate alternatives for the renovation of the sewage disposal system but problems arose because of the limited plot of land available for onsite sewage disposal; and (5) in December of 2002, Plaintiff proposed combining the subject property with an adjacent parcel she owned but later abandoned that plan. (Doc. 12, ¶¶ 18-19; Doc. 15, ¶¶ 18-19). Discovery conducted by the parties also indicates that the fire was

3

confined to the upper story of the rooming house and did not reach the septic tank, which is located 70-80 feet from the rooming house. (Doc. 12, ¶¶ 21; Doc. 15, ¶ 21). None of the experts retained to assess the conditions of the subject property (including a septic inspection company, an engineer, a septic design company, an architect, a soil scientist, and a sewage enforcement consultant) opined that the septic system was damaged by the fire. (Doc. 12, ¶ 22; Doc. 15, ¶ 22).

Ed Bland, the Lehman Township sewage enforcement officer, determined that there was no area on the subject property sufficient to support a septic system that could handle the needs of a six-unit structure. (Doc. 12, ¶ 25; Doc. 15, ¶ 25). Due to Mr. Bland's conclusions in this regard, the Plaintiff elected to join the subject property to an adjacent property that she and her husband owned in order to facilitate installation of a new septic system on the adjacent property which would service the damaged six-unit property. (Doc.12, ¶ 26; Doc. 15, ¶ 26). Plaintiff later grew concerned over the prospect of gaining the necessary permits to install the new septic system when she was advised that the process could take years and require substantial expense. (Doc. 15, ¶ 27).[3] At this point, Plaintiff contended that the fire had caused a total loss of the six-unit structure due to the

---

[3] The permitting process was to be supervised by the Pennsylvania Department of Environmental Protection because the Lehman Township sewage enforcement officer was not licensed to issue a permit for the type of new system Plaintiff required.

4

aforementioned problems in permitting and installing a new septic system that "were created by Lehman Township." (Doc. 15, ¶ 28).

Plaintiff also contends, that because Nationwide recommended Stellar Construction Company ("Stellar") to perform the work necessary to repair the damaged structure, and because Nationwide offered to waive the deductible on the Policy if Plaintiff used Stellar, Stellar functioned as Nationwide's agent with respect to the work performed at Plaintiff's premises. (Doc. 12, ¶¶ 36-37; Doc. 15, ¶¶ 36-37). This, Plaintiff reasoned, makes Nationwide liable for allegedly shoddy work performed by Stellar during the renovation of the six-unit structure. (Doc. 1-2 at ¶ ). Plaintiff and Stellar discussed the scope of the work to be performed and executed a contract whereby Plaintiff authorized Stellar to perform repair work on the damaged property and retain necessary permits. (Doc. 12, ¶ 44; Doc. 15, ¶ 44). Plaintiff acknowledges that Nationwide did not directly perform any work on the damaged structure and that she was unaware of any communication between Nationwide and Stellar regarding the repair work. (Id.). Plaintiff acknowledges also that all subcontractors were retained, supervised, and paid by Stellar and that Nationwide was not involved in the effort to secure permits, the design and implementation of any work on the septic system, nor in the decision to merge and later subdivide the parcel containing the damaged six-unit rental structure with the adjacent parcel

5

Plaintiff owned. (Id.).

II.  **Summary Judgment Standard.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A disputed fact is "material" if it could affect the outcome of the suit, given the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor, *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir.2005). Nonetheless, the party opposing summary judgment must support each essential element of the claim with concrete evidence in the record. *Celotex Corp. V. Catrett*, 477 U.S. 317, 322-23, (1986). This requirement upholds the underlying purpose of the rule, which is to avoid a trial "in cases where it is unnecessary and would only cause delay and expense." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary

judgment is appropriate. *Celotex, supra*, at 322; *Wisnieweski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir.1987). If the non-movant's evidence is merely speculative, conclusory, "or is not significantly probative, summary judgment may be granted." *Anderson, supra*, at 249-50 (internal citation omitted).

A plaintiff's mere belief is not enough to create a dispute of material fact sufficient to survive summary judgment. See *Lexington Ins. Co. V. W. Pa. Hosp.*, 423 F.3d 318, 333 (3d Cir. 2005)(holding that speculation is not sufficient to defeat a motion for summary judgment). Our circuit has stated: "...summary judgment is essentially 'put up or shut up' time for the non-moving party; the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." *Berckeley Inv. Grp., Ltd. V. Colkitt*, 455 F.3d 195, 201 (3d Cir.2006).

### III. Discussion.

Plaintiff's complaint seeks damages for breach of contract (Count I) without specifically referencing the section or sections of the contract that have allegedly been breached. Plaintiff's complaint also sought damages for negligence (Count II) based upon the allegation that Nationwide allegedly recommended Stellar Construction Company to Plaintiff as being competent to perform needed repairs and obtain necessary permits to repair the subject property when Nationwide knew or should have known that Stellar was

7

not competent to perform those services. Finally, Plaintiff's complaint alleges, in conclusory fashion, that Nationwide's alleged breach of its insurance contract with Plaintiff and its alleged negligence in recommending Stellar Construction Company constitute bad faith (Count III) on Nationwide's part. Only Count I - - Breach of Contract - - survives due to the fact that Defendant's Motion to Dismiss Counts II and III was unopposed by Plaintiff and those counts were subsequently extinguished by this Court's Order of January 26, 2015. (Doc. 10).

**A.     Breach of Contract.**

Pursuant to its breach of contract allegations, Plaintiff seeks additional payment from Nationwide to cover the "total loss" of the subject property and the value of additional lost rent in the amount of $298,700.00 after allowing for set-offs for the Policy deductible and the mortgage pay-off. (Doc. 1-2, ¶ 25). An examination of the Policy reveals that various sections thereof must be interpreted in order to assess the validity of Plaintiff's claims.

With respect to Plaintiff's claim that she is entitled to recover for the "total loss" of the property, the Court has thoroughly reviewed the Policy for language bearing on this point. Damage to the structure itself is specified on the Declarations Page in "Coverage A-Dwelling" which provides "Physical Damage Coverage" to the structure in question up to a liability limit of

8

$362,500.00 subject to a $2,500.00 deductible.[4] (Doc. 13-17 at 5). Coverage A, in pertinent part, insures: "the dwelling on the prescribed location shown in the Declarations, used principally for dwelling purposes, including structures attached to the dwelling." (Doc. 13-17 at 7). However, Coverage A "does not apply to land, including land on which the dwelling is located." (Id.). In the section of the Policy entitled "Perils Insured Against", the Policy specifies "we insure for direct physical loss to the property covered caused by a peril listed below unless the loss is included in the General Exclusions." (Doc. 13-17 at 10). Among the "Perils Listed Below", the Policy lists "Fire or Lightning". It is thus clear that the fire damage to the six-unit dwelling [5] is covered in the Policy up to the maximum amount of $362,500.00.

Having identified the applicable sections of the Policy and the applicable limits of coverage here, we now examine Plaintiff's claim that the building is a total loss that requires Nationwide to remit additional sums defined as the difference between what Nationwide has paid to date and the actual value of the property as well as an additional sum for lost rent over and above that already

---

[4] Plaintiff asserts that Nationwide waived the deductible as an inducement to Plaintiff to use Nationwide's preferred repair firm, Stellar. (Doc. 16, ¶ 15).

[5] The Court does observe, however, that the risk Nationwide undertook was damage to a "three family dwelling." See Doc. 13-17 at 5. This discrepancy between the description of the property Nationwide insured and the property for which Plaintiff seeks to recover has not been referenced in Nationwide's filings.

9

remitted by Nationwide. Plaintiff's various stipulations and acknowledgments of record defeat her own claim.

Plaintiff contends (see Doc. 17 at 3-4; Doc. 15, ¶ 9 and Doc. 7 at 2) that work was eventually halted on the reconstruction of the six-unit dwelling due to zoning and sewage issues with Lehman Township. Unfortunately for Plaintiff, and fatal to her claim, her problems obtaining the necessary permits to complete the renovation as she would prefer are not "Perils Insured Against" under the Policy. In fact, the Policy specifically and clearly provides in its "General Exclusions" that:

> We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
> 1. Ordinances or Law, meaning enforcement of any ordinance or law regulating the use, construction, repair, or demolition of a building or other structure unless specifically provided under this policy. [6]

(Doc. 13-17 at 11). The clear meaning of this exclusion is that Plaintiff may not recover the cost of bringing the property to code

---

[6] The Policy contains no specific provision to the contrary. Thus, additional expense caused by an insured's effort to comply with local ordinance or state laws are not reimbursable under the Policy.

10

or obtaining permits from a municipality.

The major thrust of Plaintiff's allegations against Nationwide is that she should be compensated for the total loss of her six-unit rental property, which is now presumably worth less since it can no longer generate rents due to her inability to obtain permits. While Plaintiff does suggest that the fire suppression effort may have damaged the septic system (Deposition of Lewis Bruno, Doc. 16 at 21), this suggestion based upon hearsay from unidentified parties is not competent evidence and is insufficient to create a material issue of fact here. See Lexington Insurance Company, supra. What Plaintiff fails to appreciate is that, by her own admissions, the reason the property is not currently useful for her intended purposes - - the fact that she has not obtained the necessary permits - - is not within the covered perils Nationwide insured under the Policy.

Plaintiff specifically averred in her complaint that she "has suffered a total loss of the six-unit rental structure which cannot be rebuilt <u>due to issues involving the land itself, and the permitting requirements for the sewage disposal system</u>." (emphasis supplied)(Doc. 1-2, ¶ 23). This acknowledgment that zoning and permitting issues are the reason for the alleged "total loss" of the property is reiterated in Plaintiff's version of the issues in the Joint Case Management Plan submitted by the parties. Therein, Plaintiff states: "on the recommendation of Nationwide, Plaintiff

11

contracted AG Stellar Co., Inc., to commence cleanup and construction. Unfortunately, work was eventually halted on reconstruction of the rental units <u>due to zoning and sewage issues with Lehman Township."</u> (emphasis supplied) (Doc. 7 at 1-2). These acknowledgments clearly establish that the damages Plaintiff seeks pursuant to her breach of contract claim flow from her inability or unwillingness to obtain the necessary permits to continue using the damaged structure as a rental property. These difficulties with the zoning authorizations and sewage permit process are simply not covered perils under the Policy and, for that reason, Plaintiff's claim that she is entitled to recover for a "total loss" of the property must fail.

### B. Agency.[7]

Plaintiff claims the self-same damages sought in her contract action against Nationwide on a negligence theory. This negligence theory attempts to hold Nationwide responsible for allegedly shoddy work and poor advice received from Stellar, who Plaintiff attempts to characterize as Nationwide's agent. Plaintiff contends that Stellar should be viewed as an agent of Nationwide due to

---

[7] We note that Plaintiff's negligence claim was dismissed by Order of January 26, 2015 (Doc. 10). The only reason Stellar's alleged role as Nationwide's agent would be relevant here would be in the context of a negligence claim. The Court is at a loss as to why the parties continued to brief this moot issue. Nevertheless, we shall briefly address the substance of this claim since the parties have persisted in arguing about it.

12

Nationwide's alleged recommendation of Stellar and Nationwide's alleged inducement of a waived deductible if Plaintiff contracted with Stellar. Even assuming the veracity of these allegations, their acceptance as truth would not transform Stellar into Nationwide's agent under Pennsylvania law.

As Plaintiff herself acknowledges (Doc. 17 at 7), the basic elements of agency are three: (1) that there is a manifestation by the principal that the agent shall work for it; (2) that the agent agreed to accept that role; and (3) that there be an understanding that the principal be in control of the work. Scott v. Purcell, 415 A.2d 56, 60 (Pa. 1980). There is no evidence of record that Stellar fits all three aspects of the conjunctive test articulated in Scott, supra. Quite to the contrary, the only evidence presented to this Court on the critical question whether Nationwide controlled Stellar's work establishes that this was not the case. The Court has been furnished with the deposition of Anthony Stellar, President of Stellar. Mr. Stellar testified unequivocally that Stellar was not a subsidiary of Nationwide nor did it work under Nationwide's direction in its remediation efforts pursuant to its (Stellar's) contract with the Plaintiff and her husband. (Doc. 13-13 at 9-16). Complementing this evidence, Plaintiff has acknowledged: (1) that Nationwide and Stellar had no communication regarding the repair work; (2) that all workers and subcontractors on the project were retained, paid, and supervised by Stellar; and

13

(3) that Nationwide was not involved in the effort to secure permits nor in the design or implementation of any work on the project. See page five ante. These acknowledgments are fatal to Plaintiff's attempt to characterize Stellar as Nationwide's agent. In the absence of such an agency relationship, Nationwide cannot be liable to Plaintiff for any malfeasance by Stellar as a matter of law.

## IV. Conclusion.

For the reasons cited in the foregoing Memorandum, Defendant Nationwide's Motion for Summary Judgment (Doc. 12) will be granted. An Order consistent with this determination will be filed contemporaneously herewith.

BY THE COURT

_____
Honorable Richard P. Conaboy
United States District Court

Dated: 11-9-15

FILED
SCRANTON

NOV 09 2015

PER ___CT___
DEPUTY CLERK

14